## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| WILLIAM WRIGHT and JOHNESHA HARRISON, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>The HOUSING AUTHORITY OF THE CITY OF HARTFORD, and ANNETTE SANDERSON, in her official capacity as Executive Director of the HOUSING AUTHORITY OF THE CITY OF HARTFORD,<br><br>Defendants. | Civil Action No.<br>3:23-CV-1285<br><br><br><br><br><br>October 2, 2023<br><br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

1.    Defendant Housing Authority of the City of Hartford ("HACH") is denying qualifying low-income tenants of their rights under federal law to low-income public housing. Specifically, when setting low-income families' rent payments, HACH is unlawfully calculating low-income and no-income families' annual income by improperly including deposits and sporadic, nonrecurring contributions and donations that are not income as defined by federal law. As a result of HACH's illegal practices, low-income and no-income families are being charged higher rent amounts than they can afford.  HACH then subjects families who are tenants to eviction proceedings when they are unable to pay HACH's inflated rents without following the proper grievance procedures.  HACH's policies and practices are a violation of 42 U.S.C. § 1437 *et seq*., and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

2.    Plaintiffs William Wright and Johnesha Harrison (collectively, "Plaintiffs") are tenants in federally subsidized low-income, public housing administered by HACH who have been

subjected to HACH's unlawful policies and practices.  Plaintiffs bring this action on behalf of themselves and others that are similarly situated to stop HACH's violations of federal law and preserve their rights to low-income public housing.

## PARTIES

3.      Plaintiff William Wright ("Mr. Wright") is a tenant in low-income public housing owned and operated by HACH at 141 Woodland St., Hartford, CT 06105.

4.      Plaintiff Johnesha Harrison ("Ms. Harrison") is a tenant in low-income public housing owned and operated by HACH at 590 Garden St., Hartford, CT 06112.

5.      Defendant HACH is an independent public corporate entity established pursuant to Conn. Gen. Stat. § 8-40, which owns and operates federally funded low-income public housing for the municipality of the City of Hartford, pursuant to 42 U.S.C. § 1437 *et seq.*  Its principal place of business is 180 John D. Wardlaw Way, Hartford, CT 06106.

6.      Defendant Annette Sanderson is sued in her official capacity only.  Sanderson is the Executive Director of HACH, and, in that capacity, is responsible for overseeing HACH's low-income public housing and ultimately has the authority to direct HACH's policies with respect to rental income calculations and grievance procedures.

## JURISDICTION AND VENUE

7.      This Court has personal jurisdiction over Defendants HACH and Sanderson because HACH's principal place of business is in this District, HACH conducts business in this District, the activity that gives rise to Plaintiffs' claims has taken place and is continuing to take place in this District, and HACH continuously and systematically has operations in this District.

8.       The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises under the laws and Constitution of the United States.

9.    The Court has supplemental jurisdiction over Plaintiffs' state law claim pursuant to 28 U.S.C. § 1367 because the claim is substantially related to Plaintiffs' federal claims and arises out of the same nucleus of operative facts.

10.    Pursuant to 28 U.S.C. § 1391(b), venue is proper in this District because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District.

11.    Declaratory relief is authorized by 28 U.S.C. §§ 2201 and 2202.

STATUTORY AND REGULATORY FRAMEWORK

**Rental Amounts**

12.    Pursuant to 42 U.S.C. § 1437(a), "[i]t is the policy of the United States . . . to assist States and political subdivisions of States to address the shortage of housing affordable to low-income families."

13.    42 U.S.C. § 1437a(a) provides for the rental of dwellings to low-income families that qualify as low-income at the time of their initial occupancy of such units.  It further provides that a family's income shall be reviewed at least annually.

14.    Annual income serves as a starting point for a family's rental payment, which is then determined pursuant to 42 U.S.C. § 1437a.

15.    A family's rent is determined by a calculation of annual income pursuant to 24 C.F.R. § 5.609 ("Annual Income").

16.    A family's monthly income is one twelfth of the family's Annual Income calculated pursuant to 24 C.F.R. § 5.609.  The family's monthly adjusted income is one twelfth of the family's Annual Income "after any income exclusions" as specified in 42 U.S.C. § 1437a.

17.     Qualifying families' rental payment may not exceed more than thirty percent (30%) of the family's monthly adjusted income; ten percent (10%) of the family's monthly income; or an amount designated by a welfare agency to meet the family's housing costs, whichever is highest. 42 U.S.C. § 1437a(a)(1).  Families can elect annually to pay a "flat rent" which is generally not lower than 80% of a fair market rental established by the Department of Housing and Urban Development ("HUD"). 42 U.S.C. § 1437a(a)(2)(A), (B).

18.     42 U.S.C. § 1437a(a)(3)(A) provides for a minimum rental payment of not more than $50 where the family's monthly income or monthly adjusted income calculation pursuant to Section 1437a(a)(1) is lower than the minimum rental payment.  Therefore, low-income families pay the higher of the minimum rental payment or their income-based rent calculation under Section 1437a(a)(1).  HACH has set the minimum rental payment at the maximum of $50.[1]

19.     Low-income families are not obligated to pay either the income-based rent or the minimum rent if they qualify for a hardship exemption under 42 U.S.C. § 1437a(a)(3)(B).  A hardship exemption is a mandatory right for families experiencing a financial hardship,

> which shall include situations in which (I) the family has lost eligibility for or is awaiting an eligibility determination for a Federal, State, or local assistance program[;] . . . (II) *the family would be evicted as a result of the imposition of the minimum rent requirement under subparagraph (A)*; (III) the income of the family has decreased because of changed circumstance, including loss of employment; (IV) a death in the family has occurred; and (V) other situations as may be determined by the agency (or the Secretary, in the case of a family described in subparagraph (A)(ii)).

42 U.S.C. § 1437a(a)(3)(B) (emphasis added).

---

[1] HACH is proposing to lower the minimum rent from $50 to $0 in 2024.  Proposed Annual Public Housing Agency Plan for the Fiscal Year 2024 at 16. The Proposed Annual Public Housing Agency Plan is available here:
https://cms6.revize.com/revize/hartfordhouse/Documents/PHA%20Plans%20and%20Policies/CT003v01%20-%20HACH%20Annual%20PHA%20Plan%202024%20-%20FOR%20PUBLIC%20REVIEW%20-%202023-08-18a.pdf.

20.     A public housing agency "shall immediately grant an exemption from application of the minimum monthly rental" upon a showing of financial hardship.  *Id.*

21.     If the public housing authority determines that the hardship is of a temporary nature, the exemption initially is granted for 90 days, during which period the family cannot be evicted; if the family can demonstrate during that period that the hardship is long-term, the minimum rent is retroactively abated.  *Id.*

**Calculation of Income**

22.     A family's Annual Income is calculated pursuant to 24 C.F.R. § 5.609.  Pursuant to Section 5.609,

Annual income means all amounts, monetary or not, which:

(1) Go to, or on behalf of, the family head or spouse (even if temporarily absent) or to any other family member; or
(2) Are anticipated to be received from a source outside the family during the 12–month period following admission or annual reexamination effective date; and
(3) Which are not specifically excluded in paragraph (c) of this section.
(4) Annual income also means amounts derived (during the 12–month period) from assets to which any member of the family has access.

24 C.F.R. § 5.609(a).

23.     "Annual income includes . . . [p]eriodic and determinable allowances, such as alimony and child support payments, and regular contributions or gifts received from organizations or from persons not residing in the dwelling."  *Id.* § 5.609(b)(7).

24.     "Annual income does not include . . . [t]emporary, nonrecurring or sporadic income (including gifts)."  *Id.* § 5.609(c)(9).

25.     Section 5.609(c)(9) of HUD's regulations will be amended, effective January 1, 2024, to confirm that the definition of nonrecurring "income" includes (and is therefore excluded from Annual Income) in-kind donations, such as food, clothing, and toiletries, from food banks

and charities.   Housing Opportunity Through Modernization Act of 2016: Implementation of Sections 102, 103, and 104, 88 Fed. Reg. 9600-01, 9635 (February 14, 2023).[2]

26.     The commentary regarding the revision to Section 5.609(c)(9) in the Federal Register demonstrates that this is not a change, but a clarification of an existing blanket exclusion from Annual Income.

27.     HUD stated it is removing 24 C.F.R. § 5.609(c)(9), which currently excludes "[t]emporary, nonrecurring or sporadic income" from Annual Income, because the language is "unclear" and is instead, defining "nonrecurring income" to expressly state the excluded items, including, among other things, "in-kind donations from food banks or other organizations."  *Id*. at 9635–36.  HUD's commentary makes clear that this is a clarification of existing law, not a change.

28.     HUD states it "agrees with commenters that it is cleaner and clearer to define what is not income, rather than list the almost infinite other types of money that should be considered income."  *Id*. at 9635.  "[T]o address other forms of sporadic income that would have been excluded under the previous blanket exclusion, HUD is including additional information on what 'nonrecurring income' consists of and offering specific examples: . . . in-kind donations from food banks or similar organizations."  *Id*. at 9605.

**HACH's Policies and Procedures**

29.     HACH enters into a Residential Rental Agreement with each family, which governs the respective parties' obligations related to the tenancy.

---

[2] On September 29, 2023, HUD issued a notice providing implementation guidance for the amended regulations. Due to software changes necessitated by other parts of the regulations irrelevant to this action, the compliance date for implementing the regulations is January 1, 2025. HUD's implementation guidance may be found here: https://www.hud.gov/sites/dfiles/PIH/documents/PIH2023-27.pdf.

30.    As part of the Residential Rental Agreement, Section 1.6 governs: "Tenant shall pay HACH as Rent the greatest of the Worksheet's *Rent Calculation*: Item 13, *Flat Rent*; Item 21, *Total Rent (TTP – Utility Allowance)*; and Item 27, *Tenant Rent for Mixed Family*; per month, subject to change in accordance with HACH policy and Dept. of Housing and Urban Development (HUD) requirements)."

31.    The total tenant payment (often referred to as the "TTP"), defined by the Housing Authority of the City of Hartford Admissions and Continued Occupancy Policy for the Low-Income Public Housing Program (2023) (hereinafter "2023 ACOP") is the calculation required by 42 U.S.C. § 1437a(a)(1), taking the highest of: 30% of the family's monthly adjusted income; 10% of the family's monthly gross income; the welfare rent; and the minimum rent.  Section 6-III.A p. 6-46. The 2023 ACOP may be accessed here:

https://cms6.revize.com/revize/hartfordhouse/Documents/PHA%20Plans%20and%20Policies/ACOP%202023v03%20-%20FINAL%20-%202023-05-10i.pdf.

32.    HACH is bound by each Residential Rental Agreement to calculate rent pursuant to federal law, including the regulations promulgated by HUD, such as 24 C.F.R. § 5.609.

33.    In violation of HUD regulations, HACH includes in-kind contributions from food banks and charities, and nonrecurring, sporadic payments and deposits when calculating a family's total rent for Item 21.

34.    HACH's improper calculation inflates a family's rent and charges a greater amount than the family otherwise would have to pay under a correct application of federal law.

35.    Notably, Section 1.6 of the Residential Rental Agreement does not identify the minimum rent as a potential amount for setting a family's rent, presupposing that the rental calculations will automatically be greater than the $50 minimum rent.

36.     The exclusion of the minimum rent from Section 1.6 of the Residential Rental Agreement is part of HACH's overall policy and practice of denying families' their right to pay the minimum rent when eligible and a hardship exemption when they are unable to pay the minimum rent.

37.     Although the 2023 ACOP contains a provision for "Verifying Zero Annual Income Status," Section 7-II.I pp. 7-17–7-18, HACH has a written policy stating that it "finds it not credible that any family has $0 of in-kind contributions and no cash income." 2023 ACOP p. 6-2 n.49 (the "No Zero-Income Policy").

38.     A family with zero income cannot afford the minimum rental payment and would therefore be evicted if forced to pay the minimum rent.

39.     HACH's 2023 ACOP sets out a policy and procedure for verifying whether a family truly has zero income. 2023 ACOP, p. 7-18.  It states in part, "[t]he [public housing authority] will not accept only a certification of cash income. The [public housing authority] also needs to know the value of in-kind contributions to income." *Id.*

40.     HACH requires that families claiming to have $200 or less of adjusted income per month complete a "Zero Income or Income Insufficient to Support Lifestyle" form ("Zero Income Form").      An      example      of      the      form      can      be      found      here: https://cms6.revize.com/revize/hartfordhouse/HACH%20Zero%20Income%20Questionnaire.pdf.

41.     The Zero Income Form includes fields to list the value of, *inter alia*, food, paper products, grooming products, cleaning products, and clothing that low-income families purportedly receive on a recurring basis.

42.     The Zero Income Form does not distinguish between items that are from in-kind donations, and those that are regular contributions or gifts, *i.e.*, included income under 24 C.F.R. § 5.609(b)(7) or excluded income under 24 C.F.R. § 5.609(c)(9).

-8-

43.    As part of the Zero Income Form, HACH, by and through its occupancy specialists, assigns fixed "values" to food, paper products, grooming products, and clothing that a tenant receives from family, food banks, charities, and other sources.

44.    Upon information and belief, HACH failed to train or supervise its occupancy specialists to ensure they complied with federal law when determining a family's rental payment.

45.    Upon information and belief, the occupancy specialists do not undertake any investigation to determine the accuracy of the "values" they assign to the expenses listed on the Zero Income Form, nor is there guidance from HACH as to how occupancy specialists should determine these "values" in a manner that is consistent with federal law.

46.    HACH requires families to review and sign the Zero Income Form. Only after a family has signed the Zero Income Form and received a new rent calculation does HACH provide notice to the family of the opportunity to grieve the rental calculation.

47.    After assigning fixed values to an item of support, HACH's occupancy specialists arbitrarily assume that a family receives the support every single week or every single month and, thus, multiply the fixed value by either fifty-two (52) weeks or twelve (12) months.  By way of example, in the case of Mr. Wright, HACH assumed that paper products he received from a food pantry have a value of $10 and that Mr. Wright received these paper products every week, resulting in $520 of Annual Income attributed to Mr. Wright during his November 2021 rental calculation process.

48.    Apart from requiring families to sign the Zero Income Form, HACH does not undertake any investigation to determine if families actually receive support in regular weekly or monthly intervals, but assumes that they do when calculating families' rent payments.

49.     Similarly, HACH does not train or supervise its occupancy specialists regarding how to determine whether families receive support regularly.

50.     HACH even attributes "income" of $50 per month to families reporting zero income (defined as less than $200 per month) based on a requirement that they find support from family or friends to pay the minimum rent, even though, under federal law, the minimum rent is subject to waiver for a hardship exemption.

51.     The Zero Income Form states: "Do you understand that HACH's minimum rent is $50 per month, and must be considered for assessment purposes?  How do you plan on paying this expense?"

52.     HACH also examines at least three (3) months' worth of statements from either Cash App, Venmo, Apple Pay, Google Pay, PayPal, or Zelle.  *See* https://www.hartfordhousing.org/housing_choice_voucher_section_8_/participants/recertificatio n.php.

53.     Upon information and belief, HACH annualizes deposits made in these statements regardless of whether the payments qualify as Annual Income (as opposed to credits to a family's account from a previous payment) or whether they are nonrecurring income under Section 5.609(c)(9).

54.     HACH's policies and practices result in incorrect, baseless and arbitrary Annual Income calculations that artificially inflate low-income families' rental payments.

55.     HACH's policies and practices create a floor of income that families cannot fall beneath.  In doing so, it prevents otherwise qualifying families from receiving a minimum rental payment and therefore also eviscerates the application of the mandatory hardship exemption.  And,

families whose rents may legitimately be set higher than the minimum based on their income levels are made to pay more because of HACH's practices of attributing income to items that are exempt.

56.     When families are unable to pay the inflated rents, HACH initiates eviction proceedings rather than providing a hardship exemption as required by 42 U.S.C. § 1437a(a)(3)(B).

57.     Federal law requires that public housing agencies establish and implement an administrative grievance procedure when facing any proposed adverse action by a public housing authority, such as eviction or termination of their tenancy. 42 U.S.C § 1437d(k); 24 C.F.R. § 966.51.

58.     Public housing agencies are required to implement administrative grievance procedures which allow families to:

> (1) be advised of the specific grounds of any proposed adverse public housing agency action;
> (2) have an opportunity for a hearing before an impartial party upon timely request within any period applicable under subsection (l);
> (3) have an opportunity to examine any documents or records or regulations related to the proposed action;
> (4) be entitled to be represented by another person of their choice at any hearing;
> (5) be entitled to ask questions of witnesses and have others make statements on their behalf; and
> (6) be entitled to receive a written decision by the public housing agency on the proposed action.

42 U.S.C. § 1437d(k).

59.     Public housing agencies can expedite or exclude from their grievance procedures evictions or terminations of residency "that involve[] any activity that threatens the health, safety, or right to peaceful enjoyment of the premises of other tenants or employees of the public housing agency or any violent or drug-related criminal activity on or off such premises, or any activity resulting in a felony conviction." *Id.*; *accord* 24 C.F.R. §§ 966.51(a)(2)(i), 966.53(d).

60.     Federal law does not allow public housing agencies to exclude evictions due to nonpayment of rent from the required grievance procedures.  *See* 42 U.S.C. § 1437d(k); 24 C.F.R. §§ 966.51, 966.53.

61.     As a public housing agency, HACH is required to establish and implement these administrative grievance procedures.

62.     Yet, families who are unable to pay their rent due to HACH's inflated and improper calculations have been evicted or subjected to eviction proceedings without the necessary grievance procedure, in violation of 42 U.S.C. § 1437d(k) and 24 C.F.R. §§ 966.51(a)(1), 966.4(l)(3).

63.     On July 31, 2023, HUD confirmed that it had informed HACH that HACH must provide its public housing tenants notice and access to the administrative grievance procedure for lease terminations or evictions for all cases, including evictions for non-payment of rent, except those properly excluded pursuant to 42 U.S.C. § 1437d(k) and 24 C.F.R. § 966.51(a).  HACH confirmed to HUD that it would implement the proper grievance procedure policies and practices going forward, but has thus far not formally updated its policies or practices.  Though HACH has indicated that it would withdraw eviction proceedings for tenants who were denied access to the grievance procedure and who are being evicted for non-payment of rent, HACH has not yet done so.

64.     HACH's policies are a violation of 42 U.S.C. § 1437 *et seq.*, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

65.     HACH knew or should have known that its policies and practices, regarding calculation of a family's rental payment and lack of notice of a grievance procedure, were in

violation of 42 U.S.C. § 1437 *et seq.*, and the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

66.    The implementation of HACH's No Zero-Income policy results in occupancy specialists improperly calculating families' rents in violation of federal law.

67.    HACH knew or should have known that in providing housing for low income families, occupancy specialists would encounter situations when determining a family's rent where a family had or will continue to receive in-kind contributions from food banks, sporadic and non-recurring deposits, or both.

68.    HACH knew or should have known that the implementation of its No Zero-Income Policy would result in occupancy specialists improperly calculating families' rents, setting rents higher than families can afford while simultaneously prohibiting families from hardship exemptions, foreseeably resulting in evictions, and thus deprivations of property rights, for individuals who otherwise should have received a minimum rental payment or a hardship exemption.

69.    HACH's failure to adequately train or supervise occupancy specialists through the implementation of its No-Zero-Income Policy which resulted in occupancy specialists improperly including in-kind donations from food banks and charities and sporadic, non-recurring deposits in families' Annual Income, resulting in increased total tenant payments that families could not afford to pay.  As a result, Plaintiff Mr. Wright and other similarly situated class members face eviction and deprivation of their constitutionally protected property rights in their leaseholds.

70.    Even if HACH's No Zero-Income Policy did not result in the improper calculation of families' rents, the practice of including in-kind contributions and improperly including deposits

that are sporadic and non-recurring is so widespread and persistent that it constitutes a policy that HACH's supervisory authorities must have been aware of.

71.    HACH ratified occupancy specialists' improper rental calculations by initiating eviction proceedings against families whose rents were improperly calculated at rates they could not pay.

72.    Mr. Wright is, as discussed *infra*, currently facing eviction due to non-payment of rent after HACH improperly inflated his rent.  Ms. Harrison has received a Notice to Quit that threatens her with eviction for non-payment of her inflated rent.[3]

73.    Plaintiff Mr. Wright and other similarly situated class members have been directly and proximately harmed as a result of HACH's failure to train or supervise its occupancy specialists as Mr. Wright now faces eviction based on his inability to pay his improperly calculated rent.

## FACTS CONCERNING NAMED PLAINTIFFS

### Representative Plaintiff William Wright

74.    Plaintiff William Wright is a tenant living in low-income public housing administered by HACH.

75.    Mr. Wright moved into public housing in 2017, and his rent was set at the minimum rent of $50.

76.    HACH completed two Zero Income Forms for Mr. Wright in 2021.

---

[3] Ms. Harrison's Notice to Quit did not provide her with any notice of the administrative grievance procedure.

77.     On January 13, 2021, HACH completed a Zero Income Form purportedly on Mr. Wright's behalf. A copy of the January 13, 2021 Zero Income Form is attached hereto as **Exhibit A**.

78.     During the time period of January 2021, Mr. Wright periodically would receive a bag that contained household essentials, such as paper goods, grooming products, cleaning products, and laundry products from the Chrysalis Center Food Pantry ("Chrysalis Center").

79.     On the January 13, 2021 Zero Income Form, HACH attributed the following items, among others, as Annual Income to Mr. Wright from in-kind donations he received:

a.      $20 per month for paper products from the Chrysalis Center ($240 Annual Income);

b.      $10 per month for grooming products from the Chrysalis Center ($120 Annual Income);

c.      $10 per month for cleaning products from the Chrysalis Center ($120 Annual Income);

d.      $1,000 for the year for the value of donated clothing that he supposedly received ($1,000 Annual Income);

e.      $10 per month for the value of laundry ($120 Annual Income); and

f.      $50 per month of "income" based on a letter from a friend of Mr. Wright, which states: "If [Mr. Wright] is unable to pay the $50 per month rent, I am able to assist him with this obligation" ($600 Annual Income), which is attached hereto as **Exhibit B**.

80.     Mr. Wright did not know the value of the in-kind donations that he received, nor did HACH ask him for the value of the donations he received.  Instead, HACH assigned arbitrary values to these products without investigation.

81.    Based on these figures, among others, HACH set Mr. Wright's rental payment at $71 per month, which is higher than what is permitted by federal law and regulations.

82.    On November 23, 2021, HACH again completed a Zero Income Form purportedly on Mr. Wright's behalf. A copy of the November 23, 2021 Zero Income Form is attached hereto as **Exhibit C**.

83.    On that form, HACH calculated Mr. Wright's Annual Income, counting the following examples of in-kind donations he received:

a.    $10 per week for paper products from the Chrysalis Center  ($520 of Annual Income);

b.    $10 per week for the value of grooming products from the Chrysalis Center ($520 of Annual Income); and

c.    $10 per week for household cleaning products from the Chrysalis Center ($520 of Annual Income).

84.    Mr. Wright did not receive these in-kind donations weekly.

85.    Because HACH annualized these values incorrectly on a weekly basis, Mr. Wright's Annual Income increased between January 2021 and November 2021, though there was no change in his circumstances.

86.    HACH failed to properly exclude these in-kind donations from Mr. Wright's Annual Income calculation as in-kind donations from a food bank or other organization. Moreover, even if HACH were permitted to include in-kind donations from a food bank or other organization in its calculation of Mr. Wright's Annual Income (it is not), HACH did not investigate or verify the estimated dollar amounts of these items before including and annualizing them as part

of the Annual Income calculation. Based on these figures, among others, Mr. Wright's rental payment was set at $107 per month.

87.    This $107 per month rent is greater than the minimum $50 rent or hardship exemption that Mr. Wright would have otherwise been entitled to but for HACH's policies.

88.    Mr. Wright could not afford the $107 rental payment.

89.    Because Mr. Wright's monthly adjusted income[4] was calculated such that it exceeded the minimum rent, Mr. Wright could not establish that he qualifies for the hardship exemption.

90.    HACH instead initiated eviction proceedings against Mr. Wright for nonpayment. *Hous. Auth. of Hartford v. Wright*, No. HFH-CV-22-6023016-S (Conn. Super. Ct. Hous. Sess. Filed Nov. 14, 2022), https://civilinquiry.jud.ct.gov/CaseDetail/PublicCaseDetail.aspx?DocketNo=HFHCV226023016S.[5]

91.    Because Mr. Wright is being evicted for nonpayment of rent, HACH was mandated by federal law and regulations to allow him access to the administrative grievance procedure.

92.    HACH instead denied Mr. Wright access to the administrative grievance procedure by initiating eviction proceedings without allowing Mr. Wright to first challenge any proposed adverse action through the administrative grievance procedure.

---

[4] While HACH calculated Mr. Wright's rent based on his monthly adjusted income, no adjusted income exclusions were applied to his Annual Income or monthly income calculations.

[5] At this time and until Connecticut's first eviction records reform law, P.A. 23-207 § 23, becomes effective on July 1, 2024, this eviction filing is part of the permanent database that the Judicial Branch of the State of Connecticut sells to tenant screening companies. Eviction proceedings create a black mark on a tenant's applications for subsequent housing. Furthermore, these proceedings negatively affect a tenant's credit score.

93.    On December 7, 2022, effective February 1, 2023, HACH again calculated Mr. Wright's rent based on a "zero income total," or the totals from income attributed following a report of zero income.  HACH set his rental payment at $66, which is higher than the minimum rent, disqualifying Mr. Wright of the opportunity for a hardship exemption.

94.    HACH's rental calculations for Mr. Wright are in violation of federal law and regulations and the Residential Rental Agreement, which requires HACH to calculate rent in accordance with federal law and regulations.

95.    HACH's failure to train or supervise its occupancy specialists resulted in Mr. Wright's rent being improperly set at an amount he cannot afford and deprived Mr. Wright of his property rights by evicting him.

**Representative Plaintiff Johnesha Harrison**

96.    Johnesha Harrison is a single mother living in low-income public housing administered by HACH.  During the relevant time period, she worked as a school bus driver for disabled students, and currently works as a personal care assistant.

97.    HACH improperly included deposits that are not income or are nonrecurring income as Annual Income in calculating Ms. Harrison's rent.

98.    In March 2023, HACH completed a recertification and reviewed Ms. Harrison's bank statements, including deposits shown on her Cash App.

99.    Ms. Harrison's Cash App for December 2022 showed a $50 deposit from her mother to reimburse Ms. Harrison for paying her mother's life insurance.  This reimbursement was not income to Ms. Harrison (or, alternatively, was a temporary, nonrecurring, or sporadic reimbursement to her) and, therefore, should not have been included in Ms. Harrison's Annual

Income.  Nonetheless, HACH counted the $50 deposit as part of Ms. Harrison's Annual Income and annualized the reimbursement for purposes of calculating Ms. Harrison's rent payment.

100.    Ms. Harrison purchased a cell phone in January 2023, reflected in her Cash App as a $150 purchase.  The phone did not work, and the seller refunded Ms. Harrison $150, shown as a $150 credit to her account on the very next line of Ms. Harrison's Cash App.  This refund was a temporary, nonrecurring, or sporadic payment and, therefore, should not have been included in Ms. Harrison's Annual Income.  Nonetheless, HACH counted the $150 deposit as part of Ms. Harrison's Annual Income and annualized the refund for purposes of calculating Ms. Harrison's rent payment.  Thus, due to HACH's illegal policies, a $150 refund improperly was counted as $1,800 in Annual Income.

101.    In January 2023, a friend who lacked access to deposit his monies into his own bank account deposited $750 into Ms. Harrison's bank account.  Ms. Harrison then immediately transferred the $750 back to her friend via the Cash App.

102.    The identical amounts were listed on Ms. Harrison's January 2023 bank statement as a deposit and on her Cash App for that month as a debit.  However, HACH counted the $750 deposit as Annual Income.  The deposit was not income to Ms. Harrison (or, alternatively, was a nonrecurring, sporadic deposit), and, therefore, should not have been included in Ms. Harrison's Annual Income.  Nonetheless, HACH counted the $750 deposit as part of Ms. Harrison's Annual Income and annualized the deposit for purposes of calculating Ms. Harrison's rent payment.

103.    In February 2023, Ms. Harrison gave this same friend $60, which he refused to accept and returned to her, marked as "resent" on her Cash App statement.  These two transactions are on consecutive lines on her Cash App statement.  This refund was not income to Ms. Harrison (or, alternatively, was a nonrecurring, sporadic deposit) and, therefore, should not have been

included in Ms. Harrison's Annual Income. Again, HACH counted the $60 refund as Annual Income and annualized the refund for purposes of calculating Ms. Harrison's rent payment.

104.    HACH's policies and practices of counting nonrecurring deposits as Annual Income produced an inflated rent calculation for Ms. Harrison.

105.    Based on these calculations, Ms. Harrison's total tenant payment was more than the flat rent of $1,118 per month; Ms. Harrison was set to pay the flat rent which is higher than what HACH was permitted to charge her under federal statutes and regulations.

106.    In its initial Annual Income calculation, HACH included Ms. Harrison's 2022 state and federal tax refunds.

107.    When Greater Hartford Legal Aid ("GHLA") counsel interceded on Ms. Harrison's behalf in May 2023, HACH removed the tax refunds from Ms. Harrison's income and recalculated Ms. Harrison's monthly rent as $967, which remains higher than permitted by federal law because it includes deposits that are not income and are nonrecurring and sporadic. Although Ms. Harrison's counsel raised this issue with HACH, HACH maintained that deposits from family and friends would be counted as income and annualized, without addressing whether deposits were in fact income and, if so, whether they were recurring.

108.    HACH thus had actual notice that its occupancy specialists were improperly including sporadic, non-recurring deposits as income.

109.    HACH's rental calculation for Ms. Harrison is in violation of federal law and regulations and the Residential Rental Agreement, which requires HACH to calculate rent in accordance with federal law and regulations.

## CERTIFICATION OF CLASS

110.    Plaintiffs bring this action on their own behalf and pursuant to Rule 23(a), (b)(2), and (b)(3), or, alternatively, 23(c)(4), of the Federal Rules of Civil Procedure, on behalf of a class defined as follows:

> All current tenants of HACH-owned, operated, or controlled low-income public housing units, and all former tenants of HACH-owned, operated, or controlled public housing units who have resided in those units, whose total rental payment is now, has been, or will be set incorrectly by HACH by the inclusion of deposits that are not income; temporary, sporadic, or nonrecurring income; and/or in-kind donations or contributions, including, but not limited to, those tenants who have been subjected to HACH's No Zero-Income Policy.

111.    HACH owns more than 900 units in the City of Hartford.  The number of tenants who have been, are now, or will be subject to HACH's unlawful Annual Income calculation practices is too numerous for joinder.

112.    Joinder is also impractical or impossible because class members lack financial resources and legal sophistication.

113.    There are numerous issues of fact and law common to the class as a whole, including, but not limited to: (1) whether HACH's No Zero-Income Policy and policies concerning the Zero Income Form violate federal law; (2) whether HACH violated federal law by including in-kind contributions from food banks, charities and other organizations as Annual Income; (3) whether HACH's policies of assigning arbitrary values to and automatically annualizing all deposits and contributions received by past or current tenants to be Annual Income violate 42 U.S.C. § 1437a; and (4) whether HACH violated federal law by denying access to its grievance procedure to families facing eviction for alleged nonpayment of rent as required by 42 U.S.C. § 1437d(k) due to HACH's inflated and improper calculations.

114.    HACH's inclusion of in-kind donations from food banks and charities or nonrecurring deposits in the current or former tenants' Annual Income calculation is typical for each member of the class.

115.    The named Plaintiffs will fairly and adequately protect the interests of the class. The named Plaintiffs are represented by GHLA and the law firm of Day Pitney LLP, whose attorneys have litigated numerous federal and class actions.

116.    HACH has acted on grounds generally applicable to the class as a whole, making final declaratory and injunctive relief with respect to the class appropriate.

117.    Questions of law or fact common to class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

### CLAIMS FOR RELIEF

### COUNT I
### 42 U.S.C. § 1983
### (Violations of 42 U.S.C. §1437a(a))

118.    Plaintiffs reallege Paragraphs 1–117 and incorporate them herein by reference.

119.    Defendants are each a "person" within the meaning of 42 U.S.C. § 1983.

120.    Acting under color of state law and through their policies and customs, Defendants have violated, and continue to violate, the Plaintiffs' and class members' rights secured by 42 U.S.C. § 1437a(a)(1), which is actionable pursuant to 42 U.S.C. § 1983.

121.    HACH's policies include deposits that are not income and temporary, sporadic, and nonrecurring income in past or current tenant's Annual Income calculation.

122.    Temporary, sporadic, and nonrecurring income is not properly included in Annual Income.  24 C.F.R. § 5.609(c)(9).

123.    By including temporary, sporadic, and nonrecurring income in tenants' Annual Income calculation, Defendants have inflated Plaintiffs' and other class members' rent payment such that it exceeds 30 percent of the Plaintiffs' and other class members' monthly adjusted income or 10 percent of the Plaintiffs' and other class members' monthly income in violation of 42 U.S.C. § 1437a(a)(1).

### COUNT II
### 28 U.S.C. §§ 2201 and 2202
### (Violations of 42 U.S.C. § 1437a(a))

124.    Plaintiffs reallege paragraphs 1–123 and incorporate them herein by reference.

125.    There is a substantial controversy between the parties as to whether Defendants' policies and practices of including deposits that are not income and/or  that are temporary, sporadic, and nonrecurring income in past or current tenant families' Annual Income violate 42 U.S.C. § 1437a(a)(1).

126.    Defendants, on the one hand, and Plaintiffs and other class members, on the other hand, have adverse legal interests as a public housing authority and families respectively under 42 U.S.C. § 1437a.

127.    A declaratory judgment would serve a useful purpose in clarifying and settling the legal issues involved and would finalize the controversy between the parties as to the correct interpretation of § 42 U.S.C. § 1437a(a)(1).

128.    A declaratory judgment should issue declaring that Defendants' policies and practices of including deposits that are not income and/or that are temporary, sporadic, and nonrecurring income in past or current tenant families' Annual Income violate 42 U.S.C. § 1437a(a)(1).

-23-

## COUNT III
### 42 U.S.C. § 1983
### (Violations of 42 U.S.C. § 1437a(a)(1))

129.    Plaintiffs reallege Paragraphs 1–128 and incorporate them herein by reference.

130.    Defendants are each a "person" within the meaning of 42 U.S.C. § 1983.

131.    Acting under color of state law and through their policies and customs, Defendants have violated, and continue to violate, the Plaintiffs and class members' rights secured by 42 U.S.C. § 1437a(a), which is actionable pursuant to 42 U.S.C. § 1983.

132.    Defendants' policies include values assigned based on in-kind donations, such as food, clothing, and toiletries, from food banks, charities and other organizations to tenants' Annual Income calculation in violation of 42 U.S.C. § 1437a(a)(1). 24 C.F.R. § 5.609.

133.    By including in-kind donations in tenants' Annual Income calculation, Defendants have inflated Plaintiffs and other class members' rent payment such that it exceeds 30 percent of the Plaintiffs' and other class members' monthly adjusted income or 10 percent of the Plaintiffs' and other class members' monthly income in violation of 42 U.S.C. § 1437a(a)(1).

## COUNT IV
### 28 U.S.C. §§ 2201 and 2202
### (Violations of 42 U.S.C. § 1437a(a)(3))

134.    Plaintiffs reallege Paragraphs 1–133 and incorporate them herein by reference.

135.    There is a substantial controversy between the parties as to whether Defendants' policies and practices of including in-kind donations in past or current tenant families' Annual Income violates 42 U.S.C. § 1437a(a)(1). 24 C.F.R. § 5.609.

136.    Defendants, on the one hand, and Plaintiffs and other class members, on the other hand, have adverse legal interests as a public housing authority and families respectively under 42 U.S.C. § 1437a.

137.    A declaratory judgment would serve a useful purpose in clarifying and settling the legal issues involved and would finalize the controversy between the parties as to the correct interpretation of § 42 U.S.C. § 1437a(a)(1).

138.    A declaratory judgment should issue declaring that Defendants' policies and practices of including in-kind donations from food banks or charities in past or current tenant families' Annual Income violate 42 U.S.C. § 1437a(a)(1).

**COUNT V**
**42 U.S.C. § 1983**
**(Violations of 42 U.S.C. § 1437a(a)(3))**

139.    Plaintiffs reallege Paragraphs 1–138 and incorporate them herein by reference.

140.    Defendants are each a "person" within the meaning of 42 U.S.C. § 1983.

141.    Acting under color of state law and through their policies and customs, Defendants have violated, and continue to violate, the Plaintiffs and class members' rights secured by 42 U.S.C. § 1437a(a)(3), which is actionable pursuant to 42 U.S.C. § 1983.

142.    Defendants' policies include deposits and in-kind donations that are not income, but are temporary, sporadic, and nonrecurring income in past or current tenant's Annual Income calculation.

143.    Temporary, sporadic, and nonrecurring income is not properly included in Annual Income.  24 C.F.R. § 5.609(c)(9).

144.    As a result of including deposits and in-kind donations that are not income and are temporary, sporadic, and nonrecurring income in past or current tenants' Annual Income, tenants' rental payments are higher than the amount they may lawfully be required to pay pursuant to 42 U.S.C. §1437a.

145.     As a result of including deposits and in-kind donations that are not income and temporary, sporadic, and nonrecurring income in past or current tenants' Annual Income, otherwise qualifying tenants are denied their right to the minimum rental payment.

146.     As a result of including temporary, sporadic, and nonrecurring income in past or current tenant families' Annual Income, otherwise qualifying tenants are denied their right to a hardship exemption.

147.     When past or current tenants are unable to pay their rent due to a financial hardship, Defendants does not recalculate their rent as required by federal law and grant qualifying tenants a hardship exemption.

148.     When past or current tenants are unable to pay their rent due to a financial hardship, Defendants commence eviction proceedings against said tenants.

### COUNT VI
### 28 U.S.C. §§ 2201 and 2202
### (Violations of 42 U.S.C. § 1437a(a)(3))

149.     Plaintiffs reallege paragraphs 1–148 and incorporate them herein by reference.

150.     There is a substantial controversy between the parties as to whether Defendants' policies and practices of including deposits and in-kind donations that are not income and are temporary, sporadic, and nonrecurring as part of the Annual Income calculation violate 42 U.S.C. § 1437a(a)(3).

151.     There is a substantial controversy between the parties as to whether the Defendants are violating 42 U.S.C. § 1437a(a)(3) by including deposits and in-kind donations that are not income and are temporary, sporadic, and nonrecurring as Annual Income, such that Plaintiffs and class members who otherwise would qualify for the minimum rent no longer qualify due to increased rental payments.

152.    Defendants, on the one hand, and Plaintiffs and other class members, on the other hand, have adverse legal interests as a public housing authority and families respectively under 42 U.S.C. § 1437a.

153.    A declaratory judgment would serve a useful purpose in clarifying and settling the legal issues involved and would finalize the controversy between the parties as to the correct interpretation of § 42 U.S.C. § 1437a(a)(3).

154.    A declaratory judgment should issue declaring that Defendants' policies and practices of including deposits and in-kind donations that are not income and are temporary, sporadic, and nonrecurring as part of the Annual Income calculation violate 42 U.S.C. § 1437a(a)(3).

155.    A declaratory judgment should issue declaring that Defendants' policies and practices of including in-kind donations that are not income and are temporary, sporadic, and nonrecurring as Annual Income, such that Plaintiffs and class members who otherwise would qualify for the minimum rent no longer qualify due to increased rental payments in violation of 42 U.S.C. § 1437a(a)(3).

**COUNT VII**
**42 U.S.C. § 1983**
**(Violations of 42 U.S.C. § 1437d(k))**

156.    Plaintiffs reallege Paragraphs 1–155 and incorporate them herein by reference.

157.    Defendants are each a "person" within the meaning of 42 U.S.C. § 1983.

158.    Acting under color of state law and through their policies and customs, Defendants have violated, and continue to violate, the Plaintiffs and class members' rights secured by 42 U.S.C. § 1437d(k).

159.    Tenants facing eviction for nonpayment of rent as a result of Defendants' improper rental calculations have a right to access to grievance procedures pursuant to 42 U.S.C. § 1437d(k).

160.    The initiation of eviction proceedings rather than allowing families access to the grievance procedure by Defendants is actionable pursuant to 42 U.S.C. § 1983.

**COUNT VIII**
**28 U.S.C. §§ 2201 and 2202**
**(Violations of 42 U.S.C. § 1437d(k))**

161.    Plaintiffs reallege paragraphs 1–160 and incorporate them herein by reference.

162.    There is a substantial controversy between the parties as to whether Defendants' policies and practices of denying access to the administrative grievance procedure violates Plaintiffs and class members' rights pursuant to 42 U.S.C. § 1437d(k).

163.    Defendants, on the one hand, and Plaintiffs and other class members, on the other hand, have adverse legal interests as a public housing authority and families respectively under 42 U.S.C. § 1437a.

164.    A declaratory judgment would serve a useful purpose in clarifying and settling the legal issues involved and would finalize the controversy between the parties as to the correct interpretation of § 42 U.S.C. § 1437d(k).

165.    A declaratory judgment should issue declaring that Defendants' policies and practices of denying tenants access to the grievance procedure violate 42 U.S.C. § 1437d(k).

**COUNT IX**
**42 U.S.C. § 1983**
**(Violations of the Due Process Clause of the**
**Fourteenth Amendment of the U.S. Constitution)**

166.     Plaintiffs reallege Paragraphs 1–165 and incorporate them herein by reference.

167.    Defendants are each a "person" within the meaning of 42 U.S.C. § 1983.

168.    Acting under color of state law and through their policies and customs, Defendants have violated, and continue to violate, the Plaintiffs and class members' rights secured by 42 U.S.C. § 1437a(a)(3), which is actionable pursuant to 42 U.S.C. § 1983.

169.    Public housing tenant families possess a property interest protected by due process in their subsidized housing and in the right to seek a hardship exemption.

170.    Plaintiffs and class members have property rights in their leasehold interests.  As established by the Housing Act and its implementing regulations, 42 U.S.C. § 1437a(a), 24 C.F.R. § 5.630, Plaintiffs and class members have legitimate claims of entitlement to a proper calculation of their Annual Income and consideration for a hardship exemption to the minimum rent requirement.

171.    Acting under color of state law, Defendants deprived Plaintiffs and class members of these rights without proper notice and a right to be heard.  Specifically, Defendants deprived Plaintiffs and class members of their rights by failing to maintain a system of rent calculation that fairly and lawfully determines rent, as affirmed by HUD.

172.    Acting under color of state law, Defendants refused Mr. Wright access to the grievance process, depriving him of an opportunity to be heard that is mandated by federal law.

173.    Defendants' actions have violated and continue to violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

174.    The deprivations of Plaintiffs' and class members' rights are a consequence of Defendants' systemic policies, customs, and practices.

175.    Defendants systemically failed to train occupancy specialists to properly calculate families' rent by implementing its No Zero-Income Policy.

176.    Defendants failed to train or supervise occupancy specialists to not include in-kind contributions from food banks or charities as income, resulting in inflated rent calculations for low-income families.

177.    Defendants' failure to train or supervise occupancy specialists resulted in occupancy specialists improperly including deposits that are not income and sporadic and non-recurring payments as income, increasing tenant's rental payments.

178.    It was a foreseeable outcome to Defendants that their failure to adequately train occupancy specialists would result in improper rental calculations for tenants, causing them to pay inflated rent or face eviction when they could not.

179.    Defendants had actual and constructive notice that their failure to train and supervise its occupancy specialists would result in constitutional violations by depriving families of their rights to their property by forcing them to pay bloated rent.

180.    Forcing families to pay inflated rent or face eviction amounts to deliberate indifference to Plaintiffs and class members' constitutional rights in their leaseholds.

181.    Plaintiffs and class members have suffered injury as an actual and proximate cause of Defendants' failure to train or supervise occupancy specialists in how to lawfully calculate a family's rental payment, causing Plaintiffs and class members to pay more in rent than they legally should have or be evicted for their inability to pay an inflated rent, as opposed to receiving the minimum rent or a hardship exemption.

**COUNT X**
**28 U.S.C. §§ 2201 and 2202**
**(Violations of the Due Process Clause of the**
**Fourteenth Amendment of the U.S. Constitution)**

182.    Plaintiffs reallege paragraphs 1–181 and incorporate them herein by reference.

183.    There is a substantial controversy between the parties as to whether Defendants' policies and practices of depriving families of their rights to their leasehold interests without proper notice and a right to be heard by failing to maintain a system of rent calculation that fairly and lawfully determines rent and by denying tenants access to the administrative grievance procedure violates the Fourteenth Amendment of the U.S. Constitution.

184.    There is a substantial controversy between the parties as to whether Defendants have failed to train or supervise occupancy specialists to not include in-kind contributions as income, resulting in inflated rent calculations for low-income families results in a violation of the Fourteenth Amendment to the U.S. Constitution.

185.    Defendants, on the one hand, and Plaintiffs and other class members, on the other hand, have adverse legal interests as a public housing authority and families respectively under 42 U.S.C. § 1437a.

186.    A declaratory judgment would serve a useful purpose in clarifying and settling the legal issues involved and would finalize the controversy between the parties as to whether Defendants' policies and practices violate the Fourteenth Amendment to the U.S. Constitution.

187.    A declaratory judgment should issue declaring that Defendants' policies and practices of denying tenants access to the administrative grievance procedure and Defendants' failure to train its occupancy specialists to not include in-kind donations in tenants' rental calculations violate the Fourteenth Amendment to the U.S. Constitution.

## COUNT XI
### (Breach of Contract – Against HACH Only)

188.    Plaintiffs reallege Paragraphs 1–187 and incorporate them herein by reference.

189.    HACH formed binding agreements with Plaintiffs and other class members upon execution of each respective Residential Rental Agreement.

190.    Each of Plaintiffs' and other class members' Residential Rental Agreement is valid and enforceable.

191.    Plaintiffs and other class members have materially performed their obligations under their Residential Rental Agreements.

192.    HACH has breached each Residential Rental Agreement by including temporary, sporadic, and nonrecurring income in past or current tenants' Annual Income, denying otherwise qualifying tenants their right to the minimum rental payment, and, when applicable, a subsequent hardship exemption.   HACH has breached each Residential Rental Agreement by including deposits that are not income or are temporary, sporadic, and nonrecurring income in past or current tenants' Annual Income, denying otherwise qualifying tenants their right to the hardship exemption.

193.    HACH's breach of its duties under each Residential Rental Agreement has injured Plaintiffs and other class members by forcing tenant families to pay rents higher than what they are obligated to pay thereby depriving the families of access to the minimum rent or hardship exemption and causing them financial and other harms.

### RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

A.  Declare that HACH's policy that no tenant has zero income, and its acts and omissions, as set forth above, violate 42 U.S.C. § 1437a(a), and its implementing regulations;

B.  Declare that HACH's acts and omissions, as set forth above, violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution;

C.  Declare that HACH has breached its duties under the respective Residential Rental Agreements;

D.  Enter a preliminary and permanent injunction, without bond (or upon a nominal bond), enjoining HACH from: (1) including values assigned based on in-kind donations, such as food, clothing, and toiletries, from food banks, charities and other organizations to the Annual Income calculation; (2) including in-kind contributions received from any source as Annual Income without verifying the value of donations and determining that the donations are recurring and non-sporadic; (3) including as Annual Income deposits to bank accounts without confirming they are recurring and non-sporadic income; (4) initiating eviction proceedings for non-payment of rent without first allowing tenants to access the administrative grievance procedure; and (5) evicting tenants who have been subject to any of the above policies.

E.  Enter a permanent injunction requiring HACH to implement policies and procedures to train occupancy specialists on how to properly calculate Annual Income;

F.  Awarding monetary damages to compensate Plaintiffs and other class members who have paid more in rent than they otherwise should have or have incurred other damages as a result of HACH's illegal practices and, to the extent necessary to award such monetary damages, ordering the recalculation of Plaintiffs' and other class members' rents in compliance with federal law by a neutral monitor at HACH's expense;

G.  Award Plaintiffs' counsel attorney's fees and costs under 42 U.S.C. § 1988;

H.  Certify the Rule 23(b)(2) class defined above and appoint the undersigned attorneys as class counsel;

I.   Certify the Rule 23(b)(3) class defined above and appoint the undersigned attorneys as class counsel;

J.   Alternatively, certify the Rule 23(c)(4) issues as defined above and appoint the undersigned attorneys as class counsel; and

K.   Grant such other relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.


October 2, 2023                          Respectfully submitted,


                                         */s/ Erick M. Sandler*

                              By:    _____
                                         Erick M. Sandler (ct25029)
                                         Emily M. Ferriter Russo (ct31354)
                                         Caitlin M. Barrett (ct31379)
                                         Lauren G. Moscato (ct31502)
                                         **Day Pitney LLP**
                                         Goodwin Square
                                         225 Asylum Street
                                         Hartford, CT 06103
                                         Telephone:  (860) 275-0138
                                         Facsimile:   (860) 881-2459
                                         *emsandler@daypitney.com*
                                         *eferriterrusso@daypitney.com*
                                         *cbarrett@daypitney.com*
                                         *lmoscato@daypitney.com*


                                         Giovanna Shay (ct26702)
                                         Litigation & Advocacy Director
                                         **Greater Hartford Legal Aid**
                                         999 Asylum Ave., 3rd Fl.
                                         Hartford, CT 06105-2465
                                         Telephone: (860) 541-5061
                                         Facsimile: (860) 541-5050
                                         gshay@ghla.org